UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ABBOS MIRDJALILOV,                              :
        Petitioner,                          :
                               :
      v.                                  :          No.  2:25-cv-7068
                               :
WARDEN of Federal Detention Center       :
Philadelphia, *et al.*,                         :
              Respondents.                :

_____

### MEMORANDUM
**Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, ECF No. 1 – Granted**

**Joseph F. Leeson, Jr.**                                          **January 23, 2026**
**United States District Judge**

## I.    INTRODUCTION

In this Section 2241 habeas action, Petitioner Abbos Mirdjalilov, a resident alien with a pending asylum application, challenges his recent detention by Immigration and Customs Enforcement ("ICE"), arguing that the Government's application of 8 U.S.C. § 1225(b)(2) to him is contrary to law and violative of the Immigration and Nationality Act (INA), the Administrative Procedure Act ("APA"), and the Fifth Amendment Due Process Clause. Named as Respondents are the Warden of the Federal Detention Center of Philadelphia; Michael Rose (Acting Field Office Director of ICE and Removal Operations in Philadelphia); Todd Lyons (Acting Director of ICE); Kristi Noem (Secretary of the Department of Homeland Security ("DHS")); and United States Attorney General Pamela Bondi (collectively, "Respondents"). Respondents argue in opposition that (1) this Court lacks jurisdiction to intervene in Petitioner's removal proceedings, (2) Mirdjalilov is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (3) Mirdjalilov's detention does not offend due process. For the reasons below, the Court will grant the Petition.

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

Abbos Mirdjalilov, a citizen of Uzbekistan, entered the United States without inspection on November 15, 2023, *see* Pet. ¶ 3, ECF No. 1, at or near Tecate, California, *see* Notice to Appear 1, ECF No. 1-3. On November 16, 2023, Mirdjalilov was issued a Notice to Appear for removal proceedings on May 21, 2024.[1] *See* Pet. at ¶ 2; Notice to Appear. That same day, on November 16, 2023, he was released on his own recognizance. *See* Order of Release on Recognizance ("Release Order"), ECF No. 1-3.[2] In January of 2024, Mirdjalilov applied for asylum. Pet. at ¶ 4. In a notice dated February 14, 2024, the United States Citizenship and Immigration Services ("USCIS") confirmed that Mirdjalilov's asylum application "was received and is pending" as of January 29, 2024. *See* Form I-797C, Notice of Action ("Asylum Notice"), ECF No. 1-4. Mirdjalilov has no arrest record in the United States or abroad. Pet. at ¶ 6. Yet recently,[3] while driving for work in Philadelphia, Pennsylvania, Mirdjalilov was arrested and detained by ICE, *see* Pet. at ¶ 1, who did not set bond for him, *see* Resp. at 3.

Mirdjalilov alleges that his immigration case is now pending before the Elizabeth Immigration Court in New Jersey, *see* Pet. at ¶ 2, and that no hearing has yet been scheduled, *see id.* at ¶ 5; Automated Case Information, EOIR, ECF No. 1-7. However, Mirdjalilov also

---

[1]    It is unclear if Mirdjalilov appeared for removal proceedings on May 21, 2024, or if this date was changed or rescheduled. No information has been provided as to what, if anything, occurred on May 21, 2024.

[2]    Mirdjalilov's Notice to Appear, Order of Release on Recognizance ("Release Order"), and Notice of Custody Determination are all found in the docket at ECF No. 1-3. The Notice to Appear appears on pages 1-3, the Release Order appears on page 4, and the Notice of Custody Determination appears on page 5. Any references to these exhibits, by name, should also be understood as a reference to these ECF page numbers for ECF No. 1-3.

[3]    It is unclear on what day Mirdjalilov was taken into ICE custody.

provided the Court with a copy of a Notice of an In-Person Hearing scheduled for March 12, 2026, at the Philadelphia Immigration Court in Pennsylvania. *See* ECF No. 1-6.

**B.    Procedural History**

On December 16, 2025, Mirdjalilov filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. *See* Pet. In it, he alleges that his continued detention without a bond hearing is unlawful because it violates 8 U.S.C. § 1226(a),[4] Bond Regulations 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, the Administrative Procedure Act (APA), and the Due Process Clause of the Fifth Amendment, *see* U.S. Const. amend. V. *See* Pet. On January 5, 2026, Respondents filed a Response, arguing that the Court should deny habeas relief on the grounds that (1) the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g); (2) Mirdjalilov is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (3) Mirdjalilov's detention does not violate Constitutional due process requirements. *See* Resp., ECF No. 2. On January 9, 2026, Respondents notified the Court that Mirdjalilov has been transferred from Philadelphia to the Moshannon Valley Processing Center in the Middle District of Pennsylvania. *See* ECF No. 4. On January 13, 2026, the Court ordered that Mirdjalilov not be transferred outside the Commonwealth of Pennsylvania during the pendency of this matter. *See* ECF No. 5. The same day, Mirdjalilov filed a Reply to Respondents' Response. *See* ECF No. 7. The matter is now fully briefed and ready for review.

---

[4]    As a standalone statute, the Immigration and Nationality Act of 1952 ("INA") uses different section numbering than Title 8 of the United States Code. INA Sections 235 and 236 are found at 8 U.S.C. §§ 1225 and 1226, respectively. Mentions of "Section" numbers for either Title 8 or the INA may be used interchangeably herein, it being understood that a reference to Section 1225 is also a reference to INA Section 235, and vice versa, and that a reference to Section 1226 is also a reference to INA Section 236, and vice versa.

### III.   LEGAL STANDARDS

#### A.   28 U.S.C. § 2241  - Review of Applicable Law

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Court is empowered to grant habeas relief to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden is on a petitioner to show that he is in custody in violation of the Constitution or federal law." *Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025) (citing 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

#### B.   The Immigration and Nationality Act - Review of Applicable Law

#### i.   The Act's Detention Provisions

The Immigration and Nationality Act of 1952 ("INA") addresses classification and admission questions for noncitizens as well as the process for removal or deportation procedures. *See* 8 U.S.C. §§ 1101 *et seq.* Two sections of the INA provide for the detention of noncitizens pending removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and applies to "applicants for admission," who are defined as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). "Such applicants 'fall into one of two categories: those covered by Section 1225(b)(1) and those covered by Section 1225(b)(2).'" *Kashranov*, 2025 WL 3188399,

at *1 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). Section 1225(b)(1) provides for the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) is a "catchall provision" for "other aliens." *See Jennings*, 583 U.S. at 287.

Section 1225(b)(2) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). By contrast, Section 1226 is titled "Apprehension and detention of aliens," and states that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This provision allows the Government to detain the arrested alien or to release him on bond or conditional parole. *See id.* The Supreme Court has found that "[Section] 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303.

### ii.    Interim Guidance on Interpretation

For decades, agency officials voiced an intent that aliens present in the United States without inspection be entitled to a bond hearing or release on parole. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures ("Inspection and Removal"), 62 FR 10312-01 at 10323 (March 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). However, on July 8, 2025, DHS distributed a notice to all ICE employees, titled "Interim Guidance Regarding Detention Authority for

Applicants for Admission," which took a different position. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission* ("*ICE Memo*"), American Immigration Lawyers Association (AILA), (July 8, 2025), https://perma.cc/N5L5-G9QG. The new policy indicated that DHS, in conjunction with the Department of Justice ("DOJ"), had "revisited its legal position on detention and release authorities" and had "determined that section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission." *Id.* As of July 8, 2025, it became "the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* DHS also took the position that such aliens were ineligible for bond hearings before an Immigration Judge, indicating that "[f]or custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *Id.*

On September 5, 2025, the Board of Immigration Appeals issued an opinion consistent with the new DHS policy, holding that Immigration Judges lack authority to hear bond requests by aliens present in the United States who were detained pursuant to 8 U.S.C. § 1225(b), because such aliens are subject to mandatory detention without a bond hearing, regardless of their manner of entry into the country or how long they have resided here. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). In so holding, the BIA acknowledged its novel conclusion, conceding "that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Id.* at 225 n.6 (citing Inspection and Removal, 62 FR 10312-01 at 10323). Importantly, the *Hurtado* decision is not controlling on federal courts determining habeas petitions under 28 U.S.C. § 2241; federal district courts need not defer to its reasoning. *See Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19,

2025) ("[T]he Court need not defer to the BIA's decision in *Matter of Yajure Hurtado* that mandatory detention under § 1225(b)(2) applies to all applicants for admission, including those who have resided in the United States for years.") (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

C.    **Jurisdiction over 28 U.S.C. § 2241 Petitions and INA Matters - Review of Applicable Law**

Federal district courts have jurisdiction to decide petitions for writs of habeas corpus. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts."). "Habeas jurisdiction . . . is not the same thing as subject-matter jurisdiction." *Khalil v. President, United States of America*, Nos. 25-2162 and 25-2357, 2026 WL 111933, at *8 (3d Cir. Jan. 15, 2026) (explaining that the former implicates personal jurisdiction). An evaluation of a "District Court's habeas jurisdiction involves two essential principles of habeas law: (1) the district-of-confinement rule and (2) the immediate custodian requirement." *Id.* at *4. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 428 (2004) (explaining that this rule helps prevent forum shopping by habeas petitioners). With respect to subject-matter jurisdiction, however, in some immigration cases, certain provisions of the INA "limit an alien's ability to collaterally attack (challenge) ongoing immigration proceedings through habeas." *Khalil*, 2026 WL 111933, at *8. These jurisdiction-stripping INA provisions include: 8 U.S.C. §§ 1252(a), (b)(9), and (g).

Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional

and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter, shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(g) states in part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

## IV.    ANALYSIS

### A.    Jurisdiction

The Court has jurisdiction over Mirdjalilov's Petition pursuant to 28 U.S.C. § 2241, which states that "[w]rits of habeas corpus may be granted by . . . the district courts." 28 U.S.C. § 2241(a). This Court has habeas jurisdiction because Mirdjalilov was confined in this District when he filed the Petition and has named the Warden of the Federal Detention Center of Philadelphia as a Respondent. *See Padilla*, 542 U.S. at 428. Respondents argue, however, that the Court lacks subject matter jurisdiction because 8 U.S.C. §§ 1252(a), (b)(9), and (g) bar Mirdjalilov's claims. The Court disagrees.

First, Respondents contend that Section 1252(g) bars Mirdjalilov's claims because they "arise 'from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings [and] adjudicate cases,'" *see* Resp. at 6, arguing that the Secretary's decision to detain is a "specification of the decision to 'commence proceedings,'" *id.* (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-83 (1999)). Yet, Mirdjalilov asserts that he "is not challenging Respondents' right to commence proceedings, adjudicate his case, the execution of any final removal order that may result, or even their discretionary decision to detain him." Reply at 7. Rather, his Petition challenges the legality of

his current detention without a hearing pursuant to 8 U.S.C. § 1225(b)(2). *See id.* This Court is not stripped of jurisdiction to decide issues that merely "arise" from the commencement of removal proceedings if they do not concern the "specific actions" listed in Section 1252(g). *Kashranov*, 2025 WL 3188399, at *3. Section 1252(g) is construed narrowly. *See Ndiaye*, 2025 WL 3229307, at *2-3 (citing *Tazu v. Attorney Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) and *Reno*, 525 U.S. at 482). It does not prevent the Court from considering whether Mirdjalilov is unlawfully detained without a bond hearing—an issue which is, at most, collateral to the removal process, but not directly linked to it. *See Khalil*, 2026 WL 111933, at *9 (suggesting that a detention challenge may be jurisdictionally barred under Section 1252 if it is "inextricably linked" and not "wholly collateral" to the commencement of removal proceedings). Thus, Section 1252(g) does not strip the Court of jurisdiction over this matter.

Respondents also argue that Section 1252(b)(9) bars Mirdjalilov's claims because it channels to the courts of appeal any review of immigration proceedings or decisions and actions "arising from any removal-related activity." *See* Resp. at 7-8 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)) (italicization removed). Respondents cite to the case of *J.E.F.M. v. Lynch* as support for this argument,[5] but importantly, the Ninth Circuit in that case also recognized that "[Section] 1252(b)(9) has built-in limits." *See* 837 F.3d at 1032. For example, "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Id.* Moreover, "[Section] 1252(b)(9) does not apply to federal habeas corpus provisions that do not involve final orders of removal." *Id.* (internal quotations omitted). The

---

[5]    In any event, the invocation of *J.E.F.M. v. Lynch* is inconsequential here, as it involved a significantly different issue—right-to-counsel claims—which the Ninth Circuit found to be "not independent or ancillary to the removal proceedings," but rather, "an inextricable part of the administrative process." 837 F.3d 1026, 1033 (9th Cir. 2016).

Third Circuit has also confirmed that Section 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary U.S. Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Here, no final order of removal has been issued for Mirdjalilov. His application for asylum remains pending and the merits of his request will not be decided for several months. *See* Notice of In-Person Hearing on March 12, 2026, ECF No. 1-6. The Court has not been asked to review a final order or a detention challenge that is essentially "identical to" an argument against removal. *See Khalil*, 2026 WL 111933, at *11 (explaining that, where a petitioner's claim is not "detention-specific" and the challenge to his detention "necessarily challenge[s] the government's decision to commence removal proceedings," § 1252(b)(9) may strip the district court of jurisdiction). This Court has already determined that the challenge to Mirdjalilov's continued detention without a bond hearing is collateral to the removal process. Thus, Section 1252(b)(9) does not bar review of this issue.

Lastly, Respondents argue that Section 1252(a)(2)(B)(ii) "shields from judicial review discretionary decisions, such as charge determinations regarding inadmissibility." *See* Resp. at 9. Indeed, Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Yet here, as in the plethora of other habeas cases brought by ICE detainees in this District, Mirdjalilov does not challenge a discretionary decision to deny him bond, *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025), or a discretionary decision to detain him, *see Kashranov*, 2025 WL 3188399, at *4. Rather, he challenges Respondents' interpretation of INA provisions 1225(b)(2) and 1226(a) and reliance on the BIA's decision in *Hurtado*, 29 I. & N.

Dec. 216 (BIA 2025), on the basis that the application of Section 1225(b)(2) to Mirdjalilov is

unlawful. Where a petitioner challenges the *extent* of the Government's authority to detain him

under the INA, he does not challenge a "matter of discretion." *See Zadvydas v. Davis*, 533 U.S.

678, 688 (2001). Hence, Section 1252(a)(2)(B)(ii) cannot apply. Accordingly, none of the

subsections of Section 1252 serve to strip this Court of jurisdiction over the instant matter.

   **B.    INA Sections 1225 and 1226**

   The primary issue for consideration in this case is whether Section 1225(b) or Section

1226(a) applies to Mirdjalilov. Respondents argue that Mirdjalilov was lawfully detained

pursuant to 8 U.S.C. § 1225(b)(2), the "catchall provision" for all "applicants for admission not

covered by § 1225(b)(1)." *See* Resp. at 10. They assert that Mirdjalilov is therefore subject to

mandatory detention without a hearing because he is an "applicant for admission," *id.* at 12,

defined as "[a]n alien present in the United States who has not been admitted." 8 U.S.C.

§ 1225(a)(1). Respondents refer to the decision in *Hurtado* as a sweeping "BIA mandate" which

prevents such applicants from receiving bond hearings regardless of their manner of entry or how

long they have been in the United States. Resp. at 13 (discussing 29 I. & N. Dec. 216 (BIA

2025)). But Mirdjalilov correctly points out that, of the many courts presented with this issue, the

vast majority of district court opinions in the Third Circuit, and all within the Eastern District,

have rejected *Hurtado*'s holding,[6] *see* Reply at 3. This Court agrees, and reiterates that it is not

---

[6]    The Third Circuit has not yet addressed this issue, but there are currently over seventy
district cases within the Third Circuit which have addressed this issue and granted habeas relief;
more than fifty of them are from the Eastern District of Pennsylvania. *See, e.g.*, *Mendieta Chavez
v. McShane*, No. 25-cv-6968, 2026 WL 120671 (E.D. Pa. Jan. 16, 2026); *Cristancho Nava v.
Jamison*, No. 26-cv-151, 2026 WL 126152 (E.D. Pa. Jan. 16, 2026); *Dore v. Jamison*, No. 26-cv-
00203, 2026 WL 116484 (E.D. Pa. Jan. 15, 2026); *Tzi v. Jamison*, No. 26-cv-0099, 2026 WL
116486 (E.D. Pa. Jan. 15, 2026); *Nasimov v. Jamison*, No. 25-cv-7420, 2026 WL 94615 (E.D.
Pa. Jan. 13, 2026); *Hussain v. O'Neill*, No. 26-cv-35, 2026 WL 66891 (E.D. Pa. Jan. 8, 2026);
*Kobilov v. O'Neill*, No. 26-cv-0058, 2026 WL 73475 (E.D. Pa. Jan. 8, 2026); *Diallo v. Bondi*,

bound by the BIA's interpretation of Sections 1225 and 1226 in *Hurtado*. *See Ochoa v. Rose*,

No. 25-cv-7021, 2025 WL 3725042, at *3 n.4, and *Ndiaye*, 2025 WL 3229307, at *4 (both citing

*Loper Bright*, 603 U.S. at 400-01).

Respondents are correct that Section 1225(b) applies to "applicants for admission," Resp.

at 13-14,[7] but a plain reading of Section 1225(b)(2) indicates that, for this provision to apply, the

---

No. 25-cv-7421, 2026 WL 36534 (E.D. Pa. Jan. 6, 2026); *Kanaut v. Rose*, No. 25-cv-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Lara Cordon v. Jamison*, No. 25-cv-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Salinas Jaigua v. Jamison*, No. 25-cv-7115, 2025 WL 3757076 (E.D. Pa. Dec. 29, 2025); *Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025); *Kumar v. McShane*, No. 25-cv-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Rios Porras v. O'Neill*, No. 25-cv-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Emilcent v. O'Neill*, No. 25-cv-7015, 2025 WL 3709295 (E.D. Pa. Dec. 22, 2025); *Djalilov v. O'Neill*, No. 25-cv-6986, 2025 WL 3689147 (E.D. Pa. Dec. 19, 2025); *Hurtado v. Jamison*, No. 25-cv-6717, 2025 WL 3678432 (E.D. Pa. Dec. 18, 2025); *Bhatia v. O'Neill*, No. 25-cv-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Rodrigues Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Perez Suspes*, 2025 WL 3492820; *Nogueira-Mendes v. McShane*, No. 25-cv-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025); *Juarez v. O'Neill*, No. 25-cv-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025); *Soumare v. Jamison*, No. 25-cv-6490, 2025 WL 3461542 (E.D. Pa. Dec. 2, 2025); *Yilmaz v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Morocho v. Jamison*, No. 5:25-cv-05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025); *Diallo v. O'Neill*, No. 25-cv-6358, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025); *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025); *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Demirel v. Federal Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); *Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025). *See also Kiankang v. Lyons*, No. 26-cv-006, 2026 WL 115069 (D.N.J. Jan. 15, 2026); *A.D. v. Oddo*, No. 25-cv-460J, 2026 WL 101476 (W.D. Pa. Jan. 14, 2026); *Gonzalez Centeno v. Lowe*, No. 3:25-cv-2518, 2026 WL 94642 (M.D. Pa. Jan. 13, 2026); *Singh v. Oddo*, No. 3:25-cv-00429, 2026 WL 73789 (W.D. Pa. Jan. 9, 2026); *Perez v. Oddo*, No. 3:25-cv-00475, 2026 WL 60313 (W.D. Pa. Jan. 8, 2026); *Morocho v. Soto*, No. 25-cv-17603, 2026 WL 63747 (D.N.J. Jan. 8, 2026); *Villacis v. Bondi*, No. 25-cv-18958, 2026 WL 45215 (D.N.J. Jan. 7, 2026); *Zeybek v. Oddo*, No. 25-cv-512J, 2026 WL 35620 (W.D. Pa. Jan. 6, 2026); *Cifuentes v. Soto*, No. 25-cv-18029, 2025 WL 3771380 (D.N.J. Dec. 31, 2025); *Ico Coc v. Oddo*, No. 3:25-cv-00381, 2025 WL 3753965 (W.D. Pa. Dec. 29, 2025); *Polat v. Soto*, No. 2:25-cv-16893, 2025 WL 3718769 (D.N.J. Dec. 17, 2025); *Vasquez Mejia v. Noem*, No. 3:25-cv-00333, 2025 WL 3546427 (M.D. Pa. Dec. 11, 2025); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865 (M.D. Pa. Dec. 8, 2025); *Diaz Rudecindo v. Florentino*, No. 25-cv-16942, 2025 WL 3470299 (D.N.J. Dec. 3, 2025). This is not a complete list.

[7]      Respondents also cite to *Vargas Lopez v. Trump*, as support for the proposition that Sections 1225 and 1226 are not mutually exclusive. *See* Resp. at 14 (citing No. 8:25-cv-526,

"applicant for admission" must also be "seeking admission," and an immigration officer must have determined that the applicant is not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."). Contrary to the BIA's interpretation in *Hurtado*, the cannon against surplusage indicates that the phrases "applicant for admission" and "seeking admission" are not synonymous. *See Demirel v. Federal Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025); *Kashranov*, 2025 WL 3188399, at *7. Context and legislative history indicate that the phrase "seeking admission"—found in Section 1225, but not Section 1226— refers to encounters at the border, *i.e.*, ports of entry. *Montes Restrepo v. Jamison*, No. 2:25-cv-6518, 2026 WL 141803, at *10 (E.D. Pa. Jan. 20, 2026) (citing *Kashranov*, 2025 WL 3188399, at *6); *see also id.* ("Section 1225 applies to 'arriving aliens,' defined as 'applicant[s] for admission coming or attempting to come into the United States at a port-of-entry.'") (citing 8 C.F.R. § 1.2); Inspection and Removal, 62 FR 10312-01 at 10313 (explaining that, prior to being defined, the term "arriving aliens" was understood, in context, to aid in the INA's distinction between "aliens at ports-of-entry and those encountered elsewhere in the United States."). Whether Section 1225 or 1226 applies therefore depends on whether a noncitizen is "*actively trying to acquire or gain lawful entry*" into the country or whether he is already here, having

---

2025 WL 2780351, at *7-9 (D. Neb. Sept. 30, 2025)). For the reasons stated in *Montes Restrepo v. Jamison*, this Court finds Respondents' reliance on *Vargas Lopez* to be unpersuasive. *See* No. 2:25-cv-6518, 2026 WL 141803, at *10 (E.D. Pa. Jan. 20, 2026) ("[T]his Court disagrees with the reasoning in *Hurtado*, and so is not persuaded by the *Vargas Lopez* court's reliance on it. Had lawmakers intended for Section 1225 and 1226 to apply to the same category of noncitizens, there would be no need for separate provisions.").

entered without inspection. *Kashranov*, 2025 WL 3188399, at *6 (emphasis in original) (internal quotation omitted).

In short, Section 1225 "govern[s] inspections and detentions of aliens at the border," *Kashranov*, 2025 WL 3188399, at *7, but "[Section] 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. Agency history further supports this distinction, because prior to the new DHS policy of July 8, 2025, it was standard agency practice to apply Section 1226(a) to resident aliens, *see ICE Memo*, *supra* ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."), and to release most aliens awaiting removal proceedings on bond or parole. *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)).

Here, Mirdjalilov falls squarely within Section 1226(a). He entered the United States not at a port of entry in 2023, and has had a pending asylum application since 2024. He is not actively "seeking admission" into the United States because he is already present here; his pending application is not enough to place him within the scope of Section 1225(b)(2). What is more, DHS previously found that Mirdjalilov was entitled to conditional release under Section 1226 when it released Mirdjalilov on his own recognizance on November 16, 2023, "[i]n accordance with section 236 of the Immigration and Nationality Act." *See* Release Order. Respondents now assert, for seemingly the first time, that Mirdjalilov falls under Section 1225(b), but fail to provide a reason as to why his designation has suddenly changed. Without any indication of a change in circumstances affecting Mirdjalilov's status, or proof that an immigration officer has determined that Mirdjalilov is not "clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) cannot apply. *See* 8 U.S.C. § 1225(b)(2)(A). The Court therefore finds that Mirdjalilov is subject to the conditional detention provisions of Section

1226(a). His detention without a bond hearing, pursuant to Section 1225(b)(2), is therefore

unlawful and violates the INA. The Court concludes that Mirdjalilov is entitled to habeas relief

on this basis, and so will not reach the merits of Mirdjalilov's claims based on violations of 8

C.F.R. §§ 236.1, 1236.1, and 1003.19, the APA, or Fifth Amendment Due Process.

## V.    CONCLUSION

This Court, in a manner consistent with this District's recent opinions, finds that

Mirdjalilov's continued detention without a bond hearing violates the INA. Since Mirdjalilov

requests either a hearing or release in the event a hearing is not scheduled, the Court will order

the same. For the reasons stated above, Mirdjalilov shall be provided a bond hearing within

seven days from the date of this Order. Failure to provide the bond hearing as indicated will

result in Mirdjalilov's immediate release. An order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge